FILED
CLERK, U.S. DISTRICT COURT

NOV 1 4 2011

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

1  LAW OFFICES OF JEREMY P. SMITH
2  Jeremy P. Smith (Bar No.  CA 219066)
       jps@jpsfirm.com
3  19849 Nordhoff Street
4  Northridge, CA 91324
   Telephone:  (818) 912-6259
5  Facsimile:   (818) 332-7069
6

7  Attorney for Plaintiff,
   VIVO PER LEI, INC.
8

9              UNITED STATES DISTRICT COURT
10            CENTRAL DISTRICT OF CALIFORNIA
11

12  VIVO PER LEI, INC., a Nevada          Case No.: CV11-05169-**GW**(JCGx)
13  corporation,
                                          **THIRD AMENDED**
14              Plaintiff,                **COMPLAINT FOR:**
15
16          v.                            **COPYRIGHT INFRINGMENT,**
                                          **TRADEMARK**
17  GADI BRUCHIM, an individual,          **INFRINGEMENT, FALSE**
18  WILLIAM FIKHMAN, an individual,       **DESIGNATION OF ORIGIN**
    AMAZON.COM, INC., a Delaware          **AND FALSE**
19  Corporation, and Does 1-20, inclusive **REPRESENTATION,**
                                          **UNFAIR BUSINESS**
20                                        **PRACTICES**
            Defendants.
21
                                          **(Demand For Jury Trial)**
22
23
24

25       Plaintiff VIVO PER LEI, INC., by and through its undersigned counsel,
26  bring this Third Amended Complaint, pursuant to Fed. R. Civ. P. 15, against
27  the above named Defendants, and in support thereof allege the following on
28  information and belief:

**JURISDICTION AND VENUE**

1.     This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1338(a) and (b), and 17 U.S.C. § 501, and supplemental or pendant jurisdiction over any remaining claims under 28 U.S.C. § 1367 and 1338(b), as they are related to the federal claims, and arise out of the same case and controversy as the federal claims in this action.

2.     Personal jurisdiction and Venue are proper under 28 U.S.C. § 1391 (b) and (c) and 1400(b), because a substantial part of the events or omissions giving rise to the claims occurred in this district and Defendants reside in this district by virtue of being subject to personal jurisdiction in this forum and judicial district by, among others, their repeated availment and direction of their activity toward this district.  Defendants directed their activity at this forum and district, and purposefully injured Plaintiff, infringed its trademarks and copyrights, knowing Plaintiff to be located in Northridge, California.

**PARTIES**

3.     Plaintiff, Vivo Per Lei, Inc. ("Vivo") is a Nevada corporation with its principle place of business located in Northridge, California and an online place of business at http://www.orogoldcosmetics.com (the "Orogold Website").

4.     Defendant Gadi Bruchim ("Bruchim") is an individual residing on information and belief in Aventura, Florida, with last known address of 3330 NE 190 Street, Apt. #912, Aventura, Florida.  Bruchim operates an Amazon.com storefront under the pseudonym "cosmetics4less".

5.     Defendant William Fikhman ("Fikhman") is an individual residing on information and belief in Tarzana, California, with last known address of 18961 Ventura Boulevard, Tarzana, California.  Fikhman operates an Amazon.com storefront under the pseudonym "Super Duper Deals".

6.     Defendant Amazon.com, Inc. ("Amazon") is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business, on information and belief, at 1516 2nd Avenue, Seattle, Washington.

7.     The true name of Defendant sued herein as Defendant Doe 1 is unknown to Plaintiff, which sues said Defendant by such fictitious name.  Doe 1 operates an Amazon.com storefront under the pseudonym "alldeadseadeals". If necessary, Plaintiff will seek leave of court to amend this Complaint to state Doe 1's true name when ascertained.  Plaintiff is informed and believes and on that basis alleges that Doe 1 should also be subject to the relief requested herein.

8.     The true names and capacities, whether individual, corporate, associate or otherwise, of Defendants sued herein as Does 2 through 20, are unknown to Plaintiff, which sues such Defendants by such fictitious names (the "Doe Defendants" – including Doe 1).  If necessary, Plaintiff will seek leave of court to amend this Complaint to state the true names and capacities when ascertained.  Plaintiff is informed and believes, and on that basis alleges that the Doe Defendants should also be subject to the relief requested herein.

## FACTS

### Plaintiff's Business, Trademarks and Copyrights

9.     Plaintiff is engaged in the manufacture, sale and distribution of prestigious and high-end beauty and skin care products, including moisturizers, masks, serums, creams, and cleansers under the trademark "OROGOLD" (the "Orogold Product(s)").

10.     Plaintiff is the owner of U.S. Trademark Registration # 3826410 and applications therefor (including U.S. Application #s 85231857 and 85231864) and other common law rights in the Marks (the "Marks"). *See* **Exhibit A** (incorporated by reference).

11.     Plaintiff owns all right, title and interest to certain images of the Orogold Products, which constitute original and copyrightable subject matter under the Copyright Act (the "Photographs").  *See* **Exhibit B** (incorporated by reference).  The Photographs are the subject of United States Copyright Registration No. VA 1-789-570, a true and correct copy of which is attached hereto as **Exhibit F** (incorporated by reference).

12.     Plaintiff owns all right, title and interest to the content of the Orogold website located at www.orogoldcosmetics.com (the "Content").  The Orogold Website is comprised of images, including the Photographs, and the Content, all of which constitute original and copyrightable subject matter under the Copyright Act.  *See* **Exhibit C** (incorporated by reference).  A true and correct copy of the United States Copyright Office certificate of registration for the Orogold Content is attached hereto as **Exhibit E** (incorporated by reference).

13.     Plaintiff has widely used the Photographs and Content throughout the United States and, upon information and belief, Defendants presently have and previously have had unfettered access to the Photographs and Content, including on and through the Orogold Website.

14.     The Orogold Products are marketed and promoted through substantial and ongoing business activities throughout the cosmetics industry, the Orogold Website, and global advertising.  Vivo distributes the Orogold Products worldwide, through its own retail locations and website, and through licensed third party distributors, resellers, retail stores, carts, and kiosk vendors, including a significant presence in North America, Asia, Europe, the Middle East and Africa, to name a few.  As a result of widespread use and recognition, the Marks have become assets of substantial value and goodwill as indicators of the source for Vivo and the Orogold Products.

15.     The Marks, and the goodwill of Plaintiff's business in connection
therewith, are in full force and effect and have never been abandoned.

16.     Plaintiff has never authorized Defendants third party to use the
Photographs or the Content in any manner.

**Authorized Distribution of Orogold Products**

17.     Vivo has strict distribution arrangements with its authorized
resellers and licensees ("Authorized Sellers").  Authorized Sellers that have
been authorized to sell online must adhere to, among other things, minimum
advertised price guidelines and limitations on use of the Marks.  Authorized
Sellers do not have the authority to sublicense or delegate their rights, nor
resell to customers in a wholesale fashion unless expressly granted such
permission by Vivo.  These restrictions prohibit sales by Authorized Sellers to
Internet retailers and mass merchandisers.  When Internet retailers sell Orogold
Products outside of the authorized distribution channel, it damages Plaintiff's
goodwill and reduces Plaintiff's sales and interferes with Plaintiff's ability to
control the quality of the Orogold Products and protect the reputation of the
Marks.

**Defendants' Unauthorized Sales of Orogold Products**

18.     Defendants seek to profit from Plaintiff's success.  However,
Defendants know that the restrictions stated in Plaintiff's distribution
agreements and the contracts with Authorized Sellers make it impossible for
them to legitimately obtain Orogold Products from Plaintiff or Plaintiff's
distributors.  Therefore, Defendants and their associates and co-conspirators
resort to deceptive, fraudulent, and illegal trade practices to obtain Orogold
Products.  These practices include inducing Plaintiff's distributors and
Authorized Sellers to cheat Plaintiff by violating Plaintiff's distribution
agreements and contracts.  Defendants encourage Plaintiff's distributors and

Authorized Sellers to cheat Plaintiff by encouraging them to order more Orogold Products than the distributor or Authorized Seller needs.

19.    The excess Orogold Products that are ordered are sold into unauthorized distribution channels in violation of the distribution agreements and sold to persons like Defendants.  In such instances, the orders for excess Orogold Products are made by distributors and Authorized Sellers with the intent to defraud Plaintiff by misrepresenting the buyer's intention only to sell the Orogold Products in line with their agreements.  These types of frauds, deceits and deception used to acquire the Orogold Products are referred to in this Complaint as "Unauthorized Products".  Such deception was found to be criminal conduct in *United States v. Costanza*, 4 F.3d 658 (8th Circuit 1993), where false statements by a diverter to a manufacturer about the intended use or destination of goods purchased were held to support criminal convictions for mail fraud, wire fraud and transportation of stolen goods.  In *Australian Gold, Inc. v. Hatfield*, 463 F.3d 228 (10th Cir. 2006) an award of more than $5 million in damages was affirmed against defendants who engaged in wrongful acts of trademark infringement, interference with contract and false advertising in connection with a scheme to divert salon only tanning products to sell on the Internet.

**Defendants' Infringing Acts.**

20.    At least as early as January of 2011, Vivo discovered that Defendants were utilizing the Marks, Photographs and Content without authorization for sales of Unauthorized Products on their Amazon.com storefronts (the "Storefronts"), including said uses and sales of Unauthorized Products sold and fulfilled directly by Amazon.  *See* **Exhibit D** (incorporated by reference).

21.    Vivo's counsel sent multiple cease and desist letters to Defendants via Amazon's internal email system, via email and to Defendants' physical

addresses respectively where ascertainable, demanding cessation of the unauthorized sales and any and all uses of the Marks, Photographs and Content and warning of the severe consequences of, among other things, violations of the Copyright Act and the Lanham Act.

22.     Vivo's counsel has had myriad correspondence with Amazon regarding the infringement detailed herein.  At various points since their discovery on Amazon and the Storefronts and after notification as detailed above, some Photographs were removed by Amazon pursuant to its takedown procedures.  Some Photographs were never removed.  The Content was never removed.

23.     Immediately following Amazon's removal of some Photographs, Defendants Bruchim and Fikhman "reuploaded" the Photographs again to Amazon.com and the same appeared in conjunction with Unauthorized Products on both the Storefronts and on Defendant Amazon's own storefront pages for sales of Unauthorized Products sold and directly fulfilled by Amazon.

24.     In February of 2011, Plaintiff had communication with Defendant Fikhman, who indicated he was "waiting" for Plaintiff to have success in removing Unauthorized Products from Amazon.com before he would "cooperate".  Defendant Fikhman has taken no action and continues the infringement and unfair business practices alleged herein.

25.     On April 29, 2011, Defendant Bruchim responded to Plaintiff's counsel via email and represented that the Storefront would be closed.

26.     Contrary to Defendant Bruchim's promise to close the Storefront, he took no action and continues the infringement and unfair business practices alleged herein.

27.     Vivo's counsel sent further communications to Defendant Bruchim to follow up on his promise to close the Storefront account and cease

the sale of the Unauthorized Products and infringement of Plaintiff's Marks, Photographs and Content.  To date, Defendant Bruchim has not responded and the acts alleged herein continue.

28.    Plaintiff has never licensed or otherwise authorized Defendants to use the Marks in any manner.

29.    Similarly, Plaintiff has never licensed or authorized Defendants to copy, distribute, publish or otherwise use the Photographs or Content in in any manner.

30.    Defendants Bruchim and Fikhman have gone so far as to immediately reload the infringing images upon their being removed by Amazon after proper notification and acknowledgment of same, thereby demonstrating an intentional, malicious and willful act of infringement coupled with a reckless disregard for Plaintiff's intellectual property rights.  Following the takedown of certain images and the "reupload" by Defendants Bruchim and Fikhman, Defendants used the Photographs again on Amazon's own storefront pages and Defendant's Storefronts, respectively, in conjunction with the sales of Unauthorized Products.

31.    Defendants actions are willful.  Defendant Bruchim acknowledged the infringement by offering to takedown the Storefront.  Despite Defendant Amazon's requirement to takedown such infringements, their reactions are sparse and unreliable.  Further, Amazon's policy of partial compliance with mandated takedown procedures, coupled with allowing the promulgation of storefronts that demonstrate a willful and systematic patter of infringement, tortious interference, and unfair business practices falls objectively and demonstrably short of their responsibility.

32.    Amazon's direct use of the Marks, Photographs, and Content without authorization for its own sales of Unauthorized Products and direct fulfillment of such orders speaks for itself.

33.     The totality of Defendants' wrongful acts of deliberate and calculated trademark infringement, copyright infringement, and unfair competition demonstrate a systematic pattern of intellectual property theft and willful disregard for Plaintiff's rights, clearly defining this case as exceptional.

34.     Having had Plaintiff's good faith attempts to informally resolve the dispute be ignored, Plaintiff determined further non-litigation attempts at resolution would be inadequate and promptly filed this suit in order to obtain damages as well as injunctive relief, including requiring the cessation of Defendants' unauthorized sales of Orogold Products from, and unauthorized use of the Marks, Photographs and Content on, the Storefront.

35.     Plaintiff has no adequate remedy at law.

36.     Plaintiff has suffered irreparable harm and damages as a result of the acts of Defendants in an amount to be determined at trial.

## FIRST CAUSE OF ACTION
### (Copyright Infringement)

37.     Plaintiff repeats and realleges each and every allegation of paragraphs 1 through 36, above, as though fully set forth herein.

38.     The Content and Photographs are all original works of authorship and are copyrightable subject matter under the laws of the United States.  The Photographs were fixed in a tangible medium by development of the photographs and/or by uploading to a hard drive and publishing the Orogold Website bearing the Photographs.  The Content was fixed in a tangible medium by the publishing of the website containing the Content.

39.     Plaintiff is the copyright owner of the Photographs and Content.

40.     Defendants had access to the Photographs and Content through the Orogold Website.

41.     Defendants have violated Plaintiff's exclusive rights in and to the Content and the Photographs by unlawfully using, reproducing, displaying and distributing them on Amazon.com and the Storefront.

42.     Plaintiff has not consented to or authorized the wrongful activities of the Defendants as alleged herein.

43.     As a direct and proximate result of the Defendants' infringements, Plaintiff has suffered damages to its business and properties in an amount unknown to Plaintiff but which Plaintiff alleges exceeds $500,000.  Plaintiff believes and alleges it will continue to suffer such damages and that those damages will increase every day.  Plaintiff will amend its pleadings, at or before trial, to conform to proof of the amount of such damages.

44.     As a proximate result of the Defendants' wrongful conduct, the Defendants have been unjustly enriched while Plaintiff has suffered damages of a nature and in an amount according to proof at trial.

45.     Plaintiff demands and is entitled to an accounting from each of the Defendants, including all information necessary to permit Plaintiff to determine the gains, profits and advantages that the Defendants have obtained by reason of their wrongful conduct described herein.

46.     Plaintiff has no adequate remedy at law.  Monetary compensation will not afford Plaintiff adequate relief.  The Defendants' acts and omissions as alleged herein will engender the need for a multiplicity of judicial proceedings and will cause damages to Plaintiff that are difficult, if not impossible, to measure.  Unless the Defendants are preliminarily and permanently enjoined from committing the unlawful acts alleged, including infringement of the properties detailed herein, Plaintiff will continue to suffer irreparable harm.

47.     Upon information and belief, the activities of the Defendants complained of herein constitute willful and intentional infringement of the Photographs and Content in violation of the Copyright Act.  The willfulness of

Defendants' infringement is evidenced by the blatant unauthorized use, duplication, publishing and promotion of the Photographs and Content, despite numerous notifications and acknowledgments of said rights.  Defendants' activities are in total disregard of Plaintiff's rights.

48.     Plaintiff is also entitled to attorney's fees under the Copyright Act.

## SECOND CAUSE OF ACTION

### (Trademark Infringement – Lanham Act (15 U.S.C §§ 1114))

49.     Plaintiff repeats and realleges each and every allegation of paragraphs 1 through 48, above, as though fully set forth herein.

50.     Plaintiff is the owner of a federal trademark registration in the OROGOLD trademark, Registration No. 3,826,410.

51.     In addition to its federal trademark registration, Plaintiff is the owner of pending trademark applications in the OROGOLD mark, namely U.S. Serial Nos. 85/231,857 and 85/231,864 and has common law rights in the Marks.

52.     Defendants' unauthorized marketing, advertising, offering for sale and sale of Unauthorized Products constitutes trademark infringement.

53.     Plaintiff has not consented to or authorized the wrongful activities of the Defendants alleged herein.  The offering for sale and selling by Defendants of the Unauthorized Products interferes with Plaintiff's ability to control the quality of the Orogold Products and protect the reputation of the Marks.

54.     As a direct and proximate result of the Defendants' infringement of the Marks, Plaintiff has suffered damages to its business, goodwill, and property in an amount unknown but which Plaintiff alleges exceeds $500,000. Plaintiff believes and alleges it will continue to suffer such damages and that those damages will increase every day.  Plaintiff will amend its pleadings, at or before trial, to conform to proof of the amount of such damages.

55.     As a proximate result of the Defendants' wrongful conduct, the Defendants have been unjustly enriched while Plaintiff has suffered damages of a nature and in an amount according to proof at trial.

56.     Plaintiff demands and is entitled to an accounting from each of the Defendants, including all information necessary to permit Plaintiff to determine the gains, profits and advantages that the Defendants have obtained by reason of their wrongful conduct described herein.

57.     Plaintiff has no adequate remedy at law.  Monetary compensation will not afford Plaintiff adequate relief.  The Defendants' acts and omissions as alleged herein will engender the need for a multiplicity of judicial proceedings and will cause damages to Plaintiff that are difficult, if not impossible, to measure.  Unless the Defendants are preliminarily and permanently enjoined from committing the unlawful acts alleged, including infringement of the properties detailed herein, Plaintiff will continue to suffer irreparable harm. Injunctive relief is therefore appropriate pursuant to 15 U.S.C. § 1116 to prevent the Defendants from engaging in any further violations of 15 U.S.C. § 1114.

58.     Upon information and belief, the activities of the Defendants complained of herein constitute willful and intentional infringement of the Marks in violation of the Lanham Act, including, but not limited to, 15 U.S.C. § 1114.  The willfulness of Defendants' infringement is evidenced by the blatant unauthorized use, duplication, publishing and promotion of Plaintiff's Marks.  Defendants' activities are in total disregard of Plaintiff's rights.  As such, Plaintiff is entitled to damages and remedies as provided by 15 U.S.C. §§ 1116 and 1117.

### THIRD CAUSE OF ACTION

### (False Designation of Origin and False Representation (15 U.S.C. § 1125(a))

59.     Plaintiff repeats and realleges each and every allegation of paragraphs 1 through 58, above, as though fully set forth herein.

60.     The distribution, marketing, display, offering for sale and sale of Unauthorized Products constitutes a false designation of origin, false description and a false representation that the products sold by Defendants originate from, or are sponsored or authorized by Plaintiff.

61.     The activities of the Defendants in advertising, marketing and selling Unauthorized Products constitute violations of § 43(a) of the Lanham Act, 15 U.S.C. §1125(a).

62.     As a direct and proximate result of the Defendants' violations of 15 U.S.C. §1125(a), Plaintiff has suffered damage to its business, goodwill, and property in an amount unknown but which Plaintiff alleges exceeds $500,000.  Plaintiff believes and alleges it will continue to suffer such damage and that those damages will increase on a daily basis.  Plaintiff will amend its pleading, at or before trial, to conform to proof of the amount of such damages. On information and belief, the Defendants' false designation of origin and false representation was willful and intentional and Plaintiff is therefore entitled to damages, attorney's fees and remedies as provided in 15 U.S.C. § 1117.

63.     As a proximate result of the Defendants' wrongful conduct, the Defendants have been unjustly enriched while Plaintiff has suffered damages of a nature and in an amount according to proof at trial.

64.     Plaintiff demands and is entitled to an accounting from each of the Defendants, including all information necessary to permit Plaintiff to determine the gains, profits and advantages that the Defendants have obtained by reason of their wrongful conduct described herein.

65.     Plaintiff has no adequate remedy at law.  Monetary compensation will not afford Plaintiff adequate relief.  The Defendants' acts and omissions as alleged herein will engender the need for a multiplicity of judicial proceedings

and will cause damages to Plaintiff that are difficult, if not impossible, to measure.  Unless the Defendants are preliminarily and permanently enjoined from committing the unlawful acts alleged, including infringement of the properties detailed herein, Plaintiff will continue to suffer irreparable harm. Injunctive relief is therefore appropriate pursuant to 15 U.S.C. § 1116 to prevent the Defendants from engaging in any further violations of 15 U.S.C. § 1125(a).

## FOURTH CAUSE OF ACTION

### (Unfair Business Practices -- Cal. Bus. & Prof. Code §§ 17200 and 17500, *et seq.*)

66.     Plaintiff repeats and realleges each and every allegation of paragraphs 1 through 65, above, as though fully set forth herein.

67.     The wrongful conduct of the Defendants as alleged herein constitutes unfair and/or fraudulent business practices as defined by California Bus. & Prof. Code § 17200, *et seq*.

68.     The unfair competition includes, but is not limited to, the marketing, advertising, transportation, delivery, distribution, offering for sale and sale of Unauthorized Products as detailed herein, the blatant theft of intellectual property, and deceitful diversion of Plaintiff's products.

69.     As a proximate result of the Defendants' violation of the Business and Professions Code, the Defendants have been unjustly enriched.  Plaintiff demands and is entitled to an accounting from each of the Defendants, including all information necessary to permit Plaintiff to determine the gains, profits and advantages that the Defendants have obtained by reason of their wrongful conduct described herein.

70.     Plaintiff has no adequate remedy at law.  Monetary compensation will not afford Plaintiff adequate relief.  The Defendants' acts and omissions as alleged herein will engender the need for a multiplicity of judicial proceedings

and will cause damages to Plaintiff that are difficult, if not impossible, to measure.  Unless the Defendants are preliminarily and permanently enjoined from committing the unlawful acts alleged herein, Plaintiff will continue to suffer irreparable harm.  Injunctive relief is therefore appropriate pursuant to Bus. & Prof. Code Sections 17200 and 17500, *et seq*., to prevent Defendants form engaging in any further acts of unfair competition.

## PRAYER FOR RELIEF

WHEREFORE, Vivo prays for an award as follows:

1.      Preliminary and permanent injunctive relief against all Defendants, and each of them and their subsidiaries, officers, agents, servants, directors, employees, partners, representatives, assigns, successors, related companies, attorneys and those persons in active concert or participation with them or with any of the foregoing ("Related Entities") from doing any of the following acts, either directly or indirectly, and from doing any act prefatory to the prohibited acts:

a.      Reproducing, copying, or infringing Plaintiff's Marks, including using Plaintiff's Marks, or any marks or designations confusingly similar thereto in connection with importing, manufacturing, promoting, advertising, distributing, displaying, selling, or offering to sell any unauthorized goods or services;

b.      Causing likelihood of confusion, deception or mistake as to the source, nature, or quality of the goods of Defendants;

c.      Using any false designation of origin or false representation concerning any of Plaintiff's products;

d.      Using any logo, symbol, device, trade name, trademark, or Marks that may be calculated to falsely represent that Defendants' goods are sponsored by, authorized by, endorsed by, or in any way associated with Plaintiff;

e.      Falsely implying Plaintiff's endorsement of Defendants' goods or engaging in any act or series of acts which, either alone or in combination, constitute unfair methods of competition with Vivo and from otherwise interfering with, or injuring the Marks or the goodwill associated therewith;

f.      Misrepresenting to anyone that they are authorized resellers or distributors of Orogold Products, or any products of Plaintiff;

g.      Copying, displaying, featuring, or using the Content, Photographs, or any other copyrightable subject matter from or related to the Orogold Products, or any works substantially similar thereto, or in any act in violation of Plaintiff's copyrights;

h.      Engaging in any act that is likely to dilute the distinctive quality of the Marks and/or injures Vivo's business reputation;

i.      Representing or implying that Defendants are sponsored by, affiliated with, or endorsed or licensed by Plaintiff;

j.      Marketing, advertising, transportation, delivery, distribution, offering for sale and sale of Unauthorized Products; and

k.      Knowingly assisting, inducing, aiding, or abetting any other person or business entity in engaging in or performing any of the activities referred to in paragraphs 2(a) to (j) above.

2.      For an order directing Defendants, and each of them, to file with this Court and serve on Plaintiff within 30 days after service of an injunction, a report in writing and under oath, setting forth in detail the manner and form in which Defendants have complied with the injunction;

3.      For expedited discovery about Defendants' suppliers of Unauthorized Products to assist in the investigation of the source and locations of these illegal products;

4.      For an award of money damages in the amount of at least
$2,000,000 pursuant to the remedies as provided by 15 U.S.C. §§ 1116, 1117,
and 1125, and all other statutory and common law bases;

5.      For recovery according to proof of all gains, profits, or advantages
derived by Defendants by their conduct to the fullest extent allowed by
common law, and statutes such as Bus. & Prof. Code §§ 17200 and 17500;

6.      For punitive and exemplary damages;

7.      For attorney's fees;

8.      For costs; and

9.      For such other relief as the Court deems just and proper.

Respectfully submitted,

LAW OFFICES OF JEREMY P. SMITH

Dated:    November 11, 2011        By: _____

Jeremy P. Smith, Esq.
*Attorney for Plaintiff,*
VIVO PER LEI, INC.

1

## **JURY DEMAND**

2

3

Vivo demands a trial by jury of all issues triable by jury.

4

Respectfully submitted,

5

LAW OFFICES OF JEREMY P. SMITH

6

7

8    Dated:   November 11, 2011          By: _____

9                                              Jeremy P. Smith, Esq.
                                              *Attorney for Plaintiff,*
10                                             VIVO PER LEI, INC.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28